STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-1446


MANDY LOUISE LACROIX PERDUE, ET AL.

VERSUS

DANNY DOYLE CRUSE, ET AL.


**********


APPEAL FROM THE
TWENTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF LASALLE, NO. 35,573
HONORABLE J. CHRISTOPHER PETERS, DISTRICT JUDGE


**********


**SHANNON J. GREMILLION**
**JUDGE**


**********


Court composed of Oswald A. Decuir, James T. Genovese, and Shannon J. Gremillion, Judges.

Genovese, J., concurs in the result.

                                **AFFIRMED IN PART, REVERSED IN PART**

**Ricky L. Sooter**
**Provosty, Sadler, Delaunay, Fiorenza & Sobel**
**P. O. Box 1791**
**Alexandria, LA 71309-1791**
**(318) 445-3631**
**Counsel for Plaintiffs/Appellants:**
**Mandy Louise LaCroix Perdue**
**Mary Elizabeth LaCroix Parsons**
**Leven E. LaCroix**
**Judy Mae LaCroix Craigo**

**James Eugene Mixon**
**Attorney at Law**
**P. O. Drawer 1619**
**Columbia, LA 71418**
**(318) 649-9284**
**Counsel for Defendants/Appellees:**
**Danny Doyle Cruse**
**Kathy Ann Meeks Cruse**
**Christopher Cruse**
**Joy Cruse**

**GREMILLION, Judge**.

This appeal tests the extent of the right of passage granted the owner of an enclosed estate under La.Civ.Code art. 689, et seq. Appellants, Mandy Louise LaCroix Perdue, Mary Elizabeth LaCroix Parsons, Leven L. LaCroix, and Judy Mae LaCroix Craigo (the LaCroix Heirs), are appealing the trial court's grant of a right of passage that includes the right of appellees, Danny Doyle Cruse, Kathy Ann Meeks Cruse, Christopher Cruse, and Joy Cruse, to install telephone and electrical service lines over their property, and its order allowing appellees to maintain an existing water service line that crosses their property and the quantum of damages awarded. For the reasons that follow, we affirm in part and reverse in part.

## FACTS

The LaCroix Heirs own the Northwest Quarter of the Southwest Quarter of Section 15, T8N, R2E, in LaSalle Parish, less and except property conveyed by Whitney LaCroix to Whitney Green, Charles Mills, and Elton Brian Mills. The property conveyed to Elton Brian Mills in January 1968 is approximately one acre completely enclosed by the land owned by the LaCroix Heirs. That land is situated approximately 110 feet from North June Road. There exists a passageway that was fixed by LaCroix and Mills and that is still clearly identifiable. In 1974, Dixie Shell Homes of America, Inc., caused the property to be seized and sold to satisfy a mortgage in its favor granted by Mills. Dixie Shell conveyed the property to Herman Glen and Arleen Masters McCartney in 1975. They, in turn, sold the land to Gary L. and Gwen Jackson McCartney a little over a month later. Before McCartney constructed the home he built on the property, he and LaCroix met and LaCroix designated the route McCartney could take across LaCroix's property and across

1

which he could place electrical, telephone, and water utilities. LaCroix himself cleared McCartney's route across the property. All three lines and the passage followed the same route. This route is the same now followed by electrical and telephone service lines. The present water line follows a different route outside the route cleared by LaCroix.

The property was seized from the McCartneys in 1986 to satisfy a judgment against them in favor of Jim Walter Homes, Inc., which then sold it in 1989 to John N. and Bonnie J. Powe. The Powes sold the land to Danny and Kathy Ann Cruse in 2002. The LaCroix Heirs inherited the surrounding estate from their father, Whitney LaCroix, who died in 1985.

Utilities have been present at times through the LaCroix Heirs' property to the Cruse's property. The LaCroix Heirs filed suit in March 2007 alleging that since acquiring the property, the Cruses have trespassed on their property by installing water, electrical, and sewer discharge lines, traveling across their property, and cutting trees. The LaCroix Heirs sought injunctive relief and damages.

On December 6, 2007, the trial court issued a preliminary injunction against the Cruses, preventing them from entering on, under, or above the Lacroix Heirs' land; from placing any movable property on, under, or above the land; and from discharging or disposing of sewer effluent on, under, or above the land. The injunction specifically allowed the Cruses to maintain the water and electrical lines. The Cruses were also allowed to continue to access their property across a .66 acre tract of the LaCroix Heirs' land as demonstrated on a survey introduced into evidence.

In June 2008, agents of CenturyTel installed, at Joy Cruse's request, an

2

underground telephone line across the LaCroix Heirs' property to the enclosed estate. The LaCroix Heirs filed a rule for contempt against the Cruses for violating the preliminary injunction. That rule was heard on August 11, 2008. The Cruses were held in contempt, but were allowed the opportunity to purge the contempt by having the phone line removed.

Trial was held on January 14, 2009. The trial court found, in its written reasons for judgment, that the Cruses were trespassing in utilizing the existing passage, as it had never been fixed by act or judgment. They were, though, entitled to a forced passage under the terms of La.Civ.Code art. 689 through the existing passage. The trial court also found that the Cruses, with the exception of Kathy Ann Meeks Cruse, had trespassed in the installation of the utility lines through the passage, for which the LaCroix Heirs were awarded $750.00. They received an award of $1,250.00 for the installation outside the passage of the water line. No damages were assessed for the installation of the sewer line, as this was a treatment plant wholly located within the bounds of the one-acre tract, and no evidence established that any run-off had been discharged onto the LaCroix Heirs' property.

### ASSIGNMENTS OF ERROR

The LaCroix Heirs assign the following errors:

1. The trial court erred by granting a Utilities Servitude for electricity, water line and phone lines under La.Civ.Code art. 689.

2. Even if La.Civ.Code art. 689 also provides for a servitude for utilities in a right of passage, the trial court erred by allowing the Appellees to maintain a separate utilities servitude only for the water line that is not located within the servitude of passage.

3. The trial court failed to award the proper amount of damages for two legal servitudes in light of the trespass and the fact that the Appellees never complied with the courts [sic] orders. Also, the trial court erred when it treated the trespass of the waterline as

3

more egregious than the trespass of the other utilities when determining the amount of damages.

## ANALYSIS

The right of passage is a legal servitude established by law for the benefit of owners of enclosed estates. The owner of an enclosed estate, i.e., an estate that has no access to a public road, may claim a right of passage over neighboring property to the nearest public road. He must indemnify his neighbor for the damage this causes. La.Civ.Code art. 689. The right of passage must be suitable for the kind of traffic reasonably necessary for the use of the estate. La.Civ.Code art. 690. The owner of the enclosed estate may construct on the right of way the type of road or railroad necessary to exercise the servitude. La.Civ.Code art. 691. The servitude is not available to those who voluntarily enclose their estates. La.Civ.Code art. 693. However, when the enclosure results from a partition or voluntary alienation that encloses an estate, the owner is entitled to gratuitous passage by the owner of the land on which the passage was previously exercised, even if that is not the shortest route to the public road and even if a servitude of passage is not mentioned in the act of alienation or partition. La.Civ.Code art. 694. Once the servitude is located, the owner of the enclosed estate has no right to demand its relocation. The owner of the servient estate may, however, demand relocation to a more convenient location at his own expense, provided the new location affords the same facility to the owner of the enclosed estate. La.Civ.Code art. 695.

The trial court fixed the passage at the location provided by Whitney LaCroix to McCartney. The evidence demonstrates that this route was not the shortest across the LaCroix Heirs' property to the public road. However, La.Civ.Code art. 692 provides that the route "generally shall be taken along the shortest route from the

4

enclosed estate to the public road at the location least injurious to the intervening lands." While the shortest route is the preferred route, the article qualifies that it be the route least injurious to the intervening lands. The pre-existence of the route cleared by LaCroix for McCartney renders this area the least injurious route. The trial court fixed the location by reference to the survey that was introduced at trial. That portion of the trial court's judgment is affirmed.

Article 690 currently provides that the passage must be suitable "for the kind of traffic that is reasonably necessary for the use of that [enclosed] estate." The article was amended by 1977 La. Acts No. 514. Between 1825 and 1977, the article, originally designated as La.Civ.Code art. 702, read:

> A passage must be furnished to the owner of the land surrounded by other lands, not only for himself, his slaves and workmen, but for his animals, carts, instruments of agriculture, and every thing which may be necessary for the use and working of his land.

In 1870, the article was changed to reflect the abolition of slavery by deleting the reference to slaves.[1] All three articles have in common the notion that the right of passage confers the right to transport people and goods across the servient estate. To facilitate that movement, La.Civ.Code art. 691 provides, "The owner of the enclosed estate may construct on the right of way the type of road or railroad necessary for the exercise of the servitude." While one may well question the wisdom in allowing the enclosed estate owners' right to construct a railroad across the property yet not allowing them to place utility lines, such considerations are reserved to the legislature. La.Civ.Code arts. 1 and 2. We are tasked with interpreting laws, and are bound by conventions of statutory interpretation.

---

[1] A passage must be furnished to the owner of the land surrounded by other lands, not only for himself and workmen, but for his animals, carts instruments of agriculture, and every thing which may be necessary for the use and working of his land.

The foremost of the rules of statutory construction is found in La.Civ.Code art. 9:

> When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.

One could conclude that, given the anachronism of a statute that only accounts for the physical movement across the servient estate in the modern age in which running water and electricity are taken for granted, and in which telephone lines are almost obsolete, surely the promulgators of the Civil Code intended the right of passage to encompass all the necessities for full utilization of the property. However, such intent must be implied in the statutes themselves.

We, therefore, must look to the Civil Code for further guidance in reaching this conclusion. Terms of art or technical terms must be given their technical meaning when the law involves a technical matter; in all other cases, words must be given their generally prevailing meaning. La.Civ.Code art. 11. These are not technical statutes. We will therefore examine the language to determine whether the right of passage allows for the installation of utilities. Article 689 provides for the right of passage over neighboring property to the nearest public road. Can "road" be interpreted to mean an access point for public utilities?

We think not. "In determining the common and approved usage of an undefined word, '[d]ictionaries are a valuable source.' *Gregor v. Argenot Great Central Ins. Co.*, 2002-1138, p. 7 (La.5/20/03), 851 So.2d 959, 964." *Hopkins v. Howard*, 05-732 , p. 9 (La.App. 4 Cir. 4/5/06), 930 So.2d 999, 1005, *writ denied*, 06-1047 (La. 6/23/06), 930 So.2d 984. "Road" means "an open way for vehicles, persons, and animals; *esp.* : one lying outside of an urban district." *Merriam-*

6

*Webster's Collegiate Dictionary*, p. 1076 (11ᵗʰ Ed. 2003). The use of "road" implies a means of physical transportation.

Another means of interpretation is to read statutes on the same subject *in pari materia*. La.Civ.Code art. 13. Louisiana Civil Code Article 691, governing constructions across the servient estate, references the owner of the enclosed estate's right to construct the type of road or railroad reasonably necessary for the exercise of the servitude. Again, the legislature's employment of words that imply means of physical transport, "road" and "railroad," instructs us that the right of passage is for the physical transport of people, animals, and goods. We also note that 2004 La.Acts, No. 813 enacted La.R.S. 9:1254 to grant owners of enclosed estates who have no access to their estates by means other than by waterway a right of passage over waterways to the nearest navigable waterway. La.R.S. 9:1253 created a right of passage for public transportation and utilities on roads that become public under La.R.S. 48:491(B).[2] These statutes are instructive in two ways: (1) they inform us that the legislature is primarily concerned with physical access, and (2) they demonstrate that when the legislature becomes concerned with utility routes, it possesses the facility to address that concern. The argument that the Civil Code provisions should be interpreted in light of their historical purpose would carry far more weight were it not for the fact that they were revised by the legislature in 1977. *See* 1977 La.Acts, No. 514.

This issue has come before this court before. In *Aucoin v. Fell*, 00-1254

---

[2] All roads and streets in this state which have been or hereafter are kept up, maintained, or worked for a period of three years by the authority of a parish governing authority within its parish, or by the authority of a municipal governing authority within its municipality, shall be public roads or streets, as the case may be, if there is actual or constructive knowledge of such work by adjoining landowners exercising reasonable concern over their property.

(La.App. 3 Cir. 2/7/01), 779 So2d 1087, we held that there was no implied right to a utility easement or right of way in the right of passage. "Civil Code articles 689 and 705 provide a means for the owner of an enclosed estate to access his property by foot or vehicle. . . . We find no provision in the Civil Code which grants an enclosed estate the right of a servitude of passage for utilities." *Id.*, at 1089. Also, this court, in *Salvex, Inc. v. Lewis*, 546 So.2d 1309 (La.App. 3 Cir. 1989), held that the right of passage afforded a mineral lessee did not extend to placing a pipeline within its legal servitude of passage. In that case, the right of passage allowed the lessee the right to pass over the servient estate with tanker trucks.

The trial court and the Cruses cite *Rockholt v. Keaty*, 256 La. 629, 237 So.2d 663 (1970), and *Littlejohn v. Cox*, 15 La.Ann. 67 (1860), for the proposition that the right of passage is intended to facilitate the full utility of the enclosed estate, and we agree with that proposition. However, we also note that both cases involved disputes over the physical access to the enclosed estate. The intent of the legislature, as derived from the statutory language, does not lead to the conclusion that the right of passage affords the enclosed owner any sort of construction over the servient estate he deems necessary for his intended use.

The trial court relied heavily on the fact that the property had long been used as a residence. As this was what the owners of the servient estate deemed the best use of their land, utility service was necessary for that use. If we could strain the right of passage to encompass utility service, this would certainly apply to the placement of the electrical and telephone lines. It would not apply to the placement of the water service line, which is outside the passage.

We discern no authority in the Civil Code that allows the creation of a predial

8

servitude such as that recognized by the trial court for the placement of the water service line. Such a right is reserved by the Civil Code to those created by convention or acquired by prescription. No such convention or use was demonstrated at trial.

The LaCroix Heirs also complain of the quantum of damages for trespass assessed by the trial court. They specifically contend that the trial court placed too much emphasis on the damage to the land and not enough on the "continuous inconvenience caused by the Appellees." We disagree.

The trier of fact is vested with much discretion is assessing damages. La.Civ.Code art. 2324.1. However, when legal error interdicts the fact-finding process, the appellate court must conduct a de novo review of the record to determine whether there is liability and, if so, the quantum of damages. *Touchet v. Hampton*, 08-833 (La.App. 3 Cir. 12/11/08), 1 So.3d 729, *writ denied*, 09-76 (La. 3/27/09), 5 So.3d 141. In the present matter, the trial court's assessment of damages was not interdicted by the legal error regarding the Cruses' right to place the utility lines. The assessment of damages was confined to the trespasses the trial court found and that we affirm.

The record reflects that the installation of the electrical, telephone, and water service lines did cause some damage to the LaCroix Heirs' property. The emphasis of the LaCroix Heirs' testimony was on their sense of frustration at being denied any input into the placement of the utilities. This arose in part because they insisted that a survey be done before even discussing the issue of allowing utility lines, while the Cruses languished in their home that they had to power with a portable generator. The record as a whole supports the trial court's assessment of damages, which we

9

affirm. The LaCroix Heirs clearly have little to complain about utility lines extending over the portion of their property already encumbered by the right of passage; the law is in their favor, but the equities certainly are not.

The trial court included the indemnity owed by the enclosed estate to the owners of the servient estate in the amount it assessed as damages for trespass. La.Civ.Code art. 689. Given the testimony regarding the damage to the land by the minimal clearing that the Cruses performed before moving the trailer onto the site, we find no error in this assessment.

The utility lines still cross the LaCroix Heirs' land. Those must be removed. The trial court denied injunctive relief on the grounds that compensatory damages are available to the LaCroix Heirs; theirs was thus not an irreparable injury for purposes of qualifying for injunctive relief. We note, however, that La.Code Civ.P. art. 3663 specifically allows the issuance of a permanent injunction in favor of a person whose possession of immovable property is disturbed. Trespass constitutes a disturbance in possession and can be enjoined. *Gaumnitz v. Williamson*, 36,177 (La.App. 2 Cir. 8/14/02), 824 So.2d 531. Accordingly, the Cruses are ordered to remove the water line within 90 days of the finality of this decision. They are additionally ordered to arrange removal of the telephone and electrical lines within 90 days of the finality of this opinion. The Cruses are permanently enjoined from placing any utility lines of any nature across the LaCroix Heirs' property, in the absence of a conventional servitude allowing such placement.

**CONCLUSION**

The Cruses are entitled by law to a right of passage over the LaCroix Heirs' land. The site fixed by the trial court for the passage is the least injurious to the

10

LaCroix Heirs' land. The fixing of that site as the passage is affirmed. The Cruses did trespass on the LaCroix Heirs' property. They are thus liable for damages to the LaCroix Heirs in the amount fixed by the trial court. The Cruses are not afforded the right to supply their property with utilities by virtue of the right of passage, which is a right that strictly guarantees the owner of an enclosed estate physical movement across the servient estate. The damages awarded by the trial court were not interdicted by its legal error in finding the Cruses were entitled to place utilities within the passage. The award of damages is affirmed. The issuance of a permanent injunction is appropriate in cases of trespass under La.Code Civ.P. art. 3663, and such an injunction is appropriate in the present matter. Costs of this appeal are divided equally between Appellants, Mandy Louise LaCroix Perdue, Mary Elizabeth LaCroix Parsons, Leven L. LaCroix, and Judy Mae LaCroix Craigo, and Appellees, Danny Doyle Cruse, Christopher Cruse, and Joy Cruse.

**AFFIRMED IN PART, REVERSED IN PART.**

11